COLBERG *v.* EL BANCO TERRITORIAL Y AGRÍCOLA.

APPEAL from the District Court of Mayagüez.

No. 95.—Decided May 11, 1907.

MORTGAGE TO SECURE OBLIGATIONS NEGOTIABLE BY INDORSEMENT.—Notes payable to order are negotiable by indorsement, and where a mortgage is constituted to secure the payment of such notes, the mortgage right will be deemed to have been transferred with the note, whether contracted between private parties, railroad companies, banks, or other corporations.

The facts are stated in the opinion.

*Mr. Díaz Navarro* for appellant. ·

*Mr. Juan de Guzmán Benítez* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

On March 13, 1906, Rodolfo Colberg y Pabón, a resident of Cabo Rojo, filed a complaint in the District Court of Mayagüez against the Banco Territorial y Agrícola de Puerto Rico, praying that in due time a judgment be rendered annulling the subordination of two mortgages constituted by Pedro F. Colberg in public instruments of October 1 and December 21, 1901, to secure obligations in favor of Severiano Ramírez transferable by indorsement, which subordination to another mortgage constituted by the Candelaria and Fraternidad

Salt Company in favor of the Banco Territorial y Agrícola de Puerto Rico, by public instrument of January 31, 1903, had been accepted by Pedro F. Colberg in said instrument as the attorney in fact of Severiano Ramírez. The plaintiff also prayed for the annulment of the record of such subordination in the registry of property, as well as the cancellation thereof and of the entries of subordination placed in the margin of the records of the mortgages affected thereby.

Rodolfo Colberg y Pabón alleged the following grounds in support of his complaint:

1. That by public instrument executed in Mayagüez before Notary José de Diego, on October 1, 1901, Pedro F. Colberg acknowledged that he was indebted to Severiano Ramírez in the sum of $5,000, which he agreed to pay him, with interest at the rate of 1 per cent per month, in sums of $1,000, in five different instalments to fall due on the 1st day of January, April, July and October, 1902, and January, 1903, executing a note for each of these instalments for $1,000 payable to order, and securing the total amount of these notes and $500 additional, for costs and expenses in the event of judicial proceedings, by a mortgage upon 1 share of the 31 shares into which the salt properties of Candelaria and Fraternidad were divided, said instrument being recorded in the Registry of Property of San Germán.

2. That by another instrument also recorded in the said registry and executed in Mayagüez before Notary Mariano Riera Palmer on December 21, 1901, Pedro F. Colberg acknowledged that he was indebted to Severiano Ramírez in the sum of $8,000, which he agreed to pay with interest at the rate of 1 per cent per month, in six instalments of $1,000 each, to fall due on the 21st days of February, April, June, August, October and December, 1902, and in another instalment of $2,000 to fall due on June 21, 1903, giving him for each of these instalments a note drawn to order, and securing the total amount of these notes and $500 additional for costs and expenses in the event of judicial proceedings, by a mort-

gage upon 2 shares of the ownership of the 31 into which the said salt properties Candelaria and Fraternidad were divided.

3. That on April 2, 1902, Severiano Ramírez transferred the five notes secured by mortgage constituted by the aforementioned instrument of October 1, 1901, and also the notes which fell due on October 21 and December 21, 1902, June 21, 1903, guaranteed by the mortgage constituted by the instrument of December 21, 1901, referred to, by indorsement to the plaintiff, Rodolfo Colberg y Pabón.

4. That by an instrument executed before Notary Juan de Guzmán Benítez on January 31, 1903, the general agricultural copartnership, doing business under the name of "Compañia Salinera Candelaria y Fraternidad", borrowed the sum of $40,000 from the Banco Territorial y Agrícola de Puerto Rico payable in 17 equal instalments divided into 34 *semestres,* with interest at the rate of 9 per cent per annum, which, with interest, made the debt amount to the sum of $69,521.28 which were to be repaid at the rate of $2,340.92 on July 31, 1903, on January 30 and July 31 of the following years, until 1919, and on January 30, 1920, it being agreed that if an instalment fell due and were not paid it would earn interest at the rate of one quarter of 1 per cent per month, and that if two became due and remained unpaid the entire obligation would become due and payable. This obligation was secured by mortgage upon the two afoersaid Estate of Candelaria and Fraternidad.

5. That notwithstanding the fact that Severiano Ramírez had transferred on April 2, 1902, to the plaintiff, Rodolfo Colberg y Pabón, by indorsement the eight notes to which reference has been made, the said Severiano Ramírez, represented by Pedro F. Colberg, subordinated the two mortgages constituted by the said Colberg in favor of Ramírez to that constituted in favor of the Banco Territorial y Agrícola, the subordination having been made by the said public instrument of January 31, 1903, which was recorded in the registry

of property, an entry of the said subordination being also made in the margin opposite the records of the two mortgages subordinated.

6. That the plaintiff, Colberg y Pabón, did not authorize or agree to such subordination, and that the deed of January 31, 1903, did not state that the mortgages subordinated had been executed to secure the notes transferable by indorsement drawn to the order of Serveriano Ramírez, nor which of those notes Ramírez had in his possession.

The Banco Territorial y Agrícola demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, in that it did not allege that any instrument had been executed by Severiano Ramírez assigning his mortgage right to Rodolfo Colberg, which instrument had to be recorded in the registry of property in order to produce any effects with regard to a third person, which the defendant is, and that article 153 of the Mortgage Law can not be invoked in opposition as it refers to obligations transferable by indorsement and to titles payable to bearer secured by mortgage, obligations and title, the issue of which constitutes a privilege of companies of public works, banks and corporations, which are governed by the special laws of their creation or by by-laws which authorize them to issue the same.

After argument by the parties on the demurrer aforesaid, it was overruled by decision of May 23, 1906, the defendant being granted a period of 10 days to make answer to the complaint.

In its answer to the complaint the defendant banking company made a detailed statement of the acts preceding the execution of the instrument of January 31, 1903, by which the mortgages were subordinated, the annulment of which instrument is sought by Rodolfo Colberg y Pabón, and concluded the answer with the prayer that the complaint be dismissed, and that if the transfer of the mortgages of Severiano Ramírez to Colberg y Pabón was considered good and

valid, the latter be adjudged to indemnify the bank in the sum of $15,000 for damages, with the costs.

The said defendant summarizes its allegations in the following statement of facts:

1. That by public instrument of January 8, 1895, recorded in the registry of property, the owners of the salt beds Candelaria and Fraternidad in Cabo Rojo, including Severiano Ramírez and Colberg, constituted a mortgage on said salt beds to secure the credit of 70,000 *pesos* of the money then current together with the interest thereon, in which sum they acknowledged they were indebted to the Banco Territorial y Agrícola, a condition of the mortgage being that it was to be a first mortgage and prior to any other charge, as provided by the by-laws of the bank, and that it was to continue in force until the credit acknowledged had been settled in full.

2. That by public instrument executed on July 12, 1901, Juan Colberg y Cuesta, one of the coowners of the salt beds, sold 2 of the 31 shares of stock of which they consisted to Rodolfo Colberg y Pabón, now the plaintiff, the mortgage contract in favor of the bank remaining in full force and effect the conditions of which the purchaser, Colberg y Pabón, had to accept.

3. That by public instrument of October 1, 1901, Pedro F. Colberg, another stockholder in the salt beds bound under the same mortgage contract referred to, mortgaged one of his shares in favor of his copartner in the salt beds, Severiano Ramírez, to secure the payment of $5,000, signing to the order of the creditor, Ramírez, the five notes mentioned in the complaint, although neither said instrument nor the record thereof stated that the mortgage was constituted also in favor of the persons to whom the notes were indorsed.

4. That by another instrument of December 21, 1901, the said Pedro F. Colberg acknowledged that he was indebted to Severiano Ramírez in the sum of $8,000, signing in favor and to the order of the creditor Ramírez the seven notes mentioned in the complaint, and, to secure the payment thereof,

constituting a mortgage upon the other two shares which he held in the stock of the salt beds Candelaria and Fraternidad, neither the said instrument nor the record thereof setting forth that the mortgage extended to the persons to whom the notes had been indorsed.

5. That execution proceedings having been instituted by the bank in September, 1902, in the District Court of Mayagüez, for the recovery of its mortgage credit, it prayed that demand for payment should be made on the coowners of the mortgaged salt beds, including the plaintiff, Rodolfo Colberg, the demands directed having been made during the following month of October.

6. That in order to protect the salt beds and to raise funds with which to pay the bank its mortgage credit, the Candelaria and Fraternidad Salt Company was established on December 31, 1902. The members thereof included as coowners, Pedro F. Colberg, Severiano Ramírez and the plaintiff himself, Rodolfo Colberg, with his wife, María Castora Ramírez y Colberg, the sister of Severiano, which persons, together with the other general partners, declared that the only charge they accepted on all the properties were the mortgage constituted in favor of the Banco Territorial y Agrícola, and expressly authorized the managing partners to contract a mortgage loan or to consumate any other transaction guaranteed by property, to secure the sum necessary to protect the salt beds in the proceedings prosecuted by the bank, with which they were authorized to conclude any agreement secured by mortgage.

7. That by virtue of the powers granted in said instrument and by the resolutions of the partners, the latter including the plaintiff, Rodolfo Colberg y Pabón, a new mortgage credit was negotiated with the Banco Territorial y Agrícola in order to secure more time for the payment of the previous mortgage; and it was stipulated in this agreement that the mortgage should be a first and preferred mortgage, to the

extent that if this were not so the contract would be rescinded with all the consequences derived from such rescission.

8. That as a consequence of these agreements the mortgage loan instrument subordinating other mortgages was executed on January 31, 1903, Pedro F. Colberg appearing as a party to said instrument as the attorney in fact of Severiano Ramírez, in whose name he subordinated the mortgages of the latter to that of the bank—being willing and anxious that such subordination be recorded in the registry of property.

9. That the power of attorney granted by Ramírez to Colberg to subordinate his mortgage was executed on January 25, 1903, and as said power of attorney was not considered sufficient to permit of its record in the registry, the said Severiano Ramírez and his wife, Isolina María, ratified said subordination by public instrument on April 25, 1903, whereupon the mortgage of the bank was recorded with the subordination on the 27th of the said month.

10. That the Banco Territorial y Agrícola, without canceling the first mortgage which is not to be considered paid until that subsequently constituted has been paid, nevertheless discontinued the execution proceedings it had instituted for the recovery of the former; as it had been shown that the new mortgage fulfilled the conditions stipulated, especially that relating to the priority of the liens, and on this account did not avail itself of its right to rescind it under the contract.

11. That the Candelaria and Fraternidad Salt Company having failed to comply with the conditions of payment stipulated in the instrument of January 31, 1903, the Banco Territorial y Agrícola instituted summary proceedings in the District Court of Mayagüez for the recovery of that which was due it, and the district court ordered that a demand for payment be made on the debtors; and as the registry showed two mortgages upon the salt beds in favor of Severiano Ramírez which were subsequent to that of the bank by virtue of the subordination agreed on, the bank resquested and the

court ordered on November 10, 1905, that notice of the demand should be served upon Severiano Ramírez as a creditor holding liabilities subsequent to that of the bank, which was done without Severiano Ramírez stating that he had conveyed his mortgages to the plaintiff, Rodolfo Colberg.

12. That after the public sale of the salt beds had been announced by notices such sale was held on the date fixed— that is to say, on February 12, 1906—at which sale Severiano Ramírez was present, without even then making any statement whatsoever to the effect that he had conveyed his mortgages to Rodolfo Colberg or any other person.

13. That the existence in favor of the plaintiff of mortgages prior to that of the Banco Territorial y Agrícola would constitute a violation on the part of the former of the agreement entered into between the bank and the Candelaria and Fraternidad Salt Company, of which Rodolfo Colberg was a member, said agreement being that the mortgage of the bank which was constituted by instrument of January 31, 1903, was to be considered a first and prior mortgage, without any other exception than the other mortgage held by the same bank constituted by instrument of January 8, 1895, such violation causing damage to the defendant which should be estimated at $15,000—that is to say, $9,000 which the bank would be obliged to pay Rodolfo Colberg as a preferred mortgage creditor, and $6,000 additional, constituting the costs and expenses of these proceedings and the damages occasioned thereby, by interfering with the sale of the salt beds.

The defendant specifically denied the fact alleged in the complaint that the indorsement of the eight notes referred to had really been made on the date stated by the plaintiff—that is to say, on April 2, 1902.

The trial was held on August 16 of last year, and the court after having heard the evidence and the allegations of the parties rendered judgment on the 21st of said month, holding that the law and the facts were against the plaintiff, and therefore ordering and decreeing that the latter recover

nothing from the defendant which was to be relieved of any liability by reason of the complaint, and rendering judgment in favor of the plaintiff as to the counter claim made by the defendant, and taxing the costs against said plaintiff.

The opinion and judgment of the lower court read as follows:

"The court, after having heard the evidence introduced in this case and the pleadings of the parties litigant, is of the opinion that the law and the facts are against the plaintiff, because such is the natural order and the logical consequence of the acts in litigation which took place between the time of the constitution of the first mortgage in favor of the defendant bank and the juridicial act of the subordination of the mortgage constituted to guarantee the obligations transferable by indorsement, eight of which were indorsed to said plaintiff by the original creditor, Severiano Ramírez, to whose place and stead said plaintiff is subrogated for all legal purposes, taking part in a direct manner in said acts as a coowner of the salt deposits; that he is now estopped from denying his own acts formally consented to by him, nor can he allege as a creditor that he was unaware of that which was well known to him as a coowner and in the constitution of which he cooperated directly with the other coowners, and knowing the purpose, end and object of the new salt company of which he formed part, with reference to the bank, in such manner and under circumstances of so critical and pressing a character for the interests of said company; that the evident and logical conclusion to be reached in accordance with the law and the facts is none other but that the deliberate will of the plaintiff, and therefore his consent to the juridical act of the subordination of the mortgage referred to are naturally implied in the development of the facts and the subsequent and simultaneous acts performed by the plaintiff. Therefore, as it is a fact proved to the full satisfaction of the court that the plaintiff agreed, consented to, and accepted the subordination of the mortgage the annulment of which is sought, said plaintiff now lacks the right to oppose the legal consequences engendered by his own manifest acts, and therefore the complaint is dismissd; and it is held that the plaintiff, Rodolfo F. Colberg, is not entitled to recover anything from the defendant bank which, by virtue of this judgment, is relieved of all liability, and that said plaintiff pay the costs. Therefore, and as a consequence of this opinion, judgment is rendered in favor of the plaintiff in connection with the counterclaim filed by the defendant,

and it is ordered that the proper writ issue for the satisfaction of this judgment. Mayagüez, August 21, 1906.—Isidoro Soto Nussa, Judge of the District Court of Mayagüez.''

Counsel for Rodolfo Colberg y Pabón took an appeal from the said judgment, which appeal is now awaiting the decision of this Supreme Court after the written and oral allegations of both parties have been considered and heard.

The legal questions arising from the facts alleged by the parties may be summarized as follows:

1. Is article 153 of the Mortgage Law applicable to the notes payable to order signed October 1 and December 21, 1891, in favor and to the order of Severiano Ramírez mortgaging his shares in the ownership in the salt beds Candelaria and Fraternidad to secure their payment?

2. Should the eight notes referred to in the complaint be considered as having been indorsed, with relation to the bank, by Severiano Ramírez in favor of Rodolfo Colberg on the date the endorsement states, April 2, 1902, prior to the instrument of January 31, 1903?

3. In the event that the indorsement should be considered to have been made with respect to the bank on April 2, 1902— that is to say, prior to January 31, 1903—can Rodolfo Colberg maintain the priority of his mortgage right with relation to that of the bank constituted by public instrument of January 31, 1903?

With regard to the first question, we are undoubtedly of the opinion that article 153 of the Mortgage Law is applicable to the case under discussion.

This article reads as follows:

''In a mortgage created to guarantee negotiable obligations or instruments to bearer, when the mortgage interest is alienated or assigned, it shall be understood that the latter is transferred together with the obligation or with the instrument, it being unnecessary to give notice thereof to the debtor, or to record the transfer in the registry.''

The notes drawn by Pedro F. Colberg to the order of Severiano Ramírez are negotiable documents; and a mortgage having been constituted to secure these notes the provision of the Mortgage Law herein quoted, which is conceived in general terms and which makes no distinction whatsoever between negotiable obligations, whether contracted by private individuals or by railroad companies, banks, or other corporations, is applicable to this case. This doctrine conforms to the purpose of the Mortgage Law in the wording of the article, which is none other than to consolidate the guarantees which may be constituted on real property, thus facilitating their entry into commercial transactions; and, furthermore, it has been sanctioned by the Supreme Court of Spain in its decision of February 3, 1883, and by a decision of the General Directorate of Registries of June 23, 1888, by implication if not expressly.

It would be superfluous to consider the second question in view of the terms in which the third question has been decided by the trial court, which on the evidence has held that the plaintiff agreed to, consented, and accepted the subordination of his mortgage to that of the Banco Territorial y Agrícola.

The appellant has alleged nothing against the findings by the trial court upon the evidence; and in view of these findings, which we admit to conform to the facts appearing in the action, it is evident that Rodolfo Colberg y Pabón is estopped from denying his own acts, and must abide by the legal consequences thereof, acknowledging the existence of the subordinations the annulment of which he seeks in his complaint.

In brief, although article 153 of the Mortgage Law is applicable to the notes issued and secured by mortgage by Pedro F. Colberg in favor and to the order of Severiano Ramírez, who indorsed eight of them to the plaintiff, Rodolfo Colberg y Pabón, such indorsements, even on the assumption that they had been made on April 2, 1902, as alleged in the complaint and as denied in the answer, would not constitute

a cause of action to permit Rodolfo Colberg to claim the priority of his credit to that of the bank, in accordance with the legal maxim that one is estopped by his own acts.

For the reasons stated, the judgment appealed from should be affirmed, with the costs of the appeal against the appellant, Rodolfo Colberg y Pabón.

*Affirmed.*

Chief Justice Quiñones and Justices Figueras, MacLeary. and Wolf concurred.